## WHALEY v. KEITT.

1. A finding of fact by a referee, concurred in by the Circuit judge, based upon direct testimony involving the accuracy and credibility of witnesses, affirmed.

2. Under a contract between G. and A., under which A. was to superintend a plantation of G., and was to receive the "net cotton after all expenses were paid," G. furnishing all the supplies, the provision crops were not applicable to the payment of the expenses.

3. The cotton made upon the plantation not being sufficient to pay the expenses, and A. having paid a note for supplies out of the proceeds of the cotton crop, and then brought action against G. to recover such payment (G. being the principal on such note, and A. the surety), G.'s defence was not in the nature of a counter-claim, nor was the statute of limitations applicable thereto.

Before WITHERSPOON, J., Orangeburg, October, 1883.

This case is fully stated in the Circuit decree, which was as follows:

It appears that Jacob G. Keitt placed his son, John A. Keitt, in charge of his Whetstone plantation, in the county aforesaid, for the year 1867, including stock, &c. There is no written evidence as to the terms upon which the farming operations were to be conducted. It appears that for supplies furnished the plantation that year, John A. Keitt and Jacob G. Keitt gave E. H. Rodgers & Co., of Charleston, a note for $2,237.13. John A. Keitt signed the note first without seal, and Jacob G. Keitt signed with a seal. In January, 1868, forty-eight bales of cotton, the entire cotton crop of the Whetstone plantation for that year, was shipped to the payees, E. H. Rodgers & Co., and the proceeds, $1,994.24, credited on the note aforesaid, leaving due thereon, October 1, 1868, the sum of $530.35, which was paid in full by the father, Jacob G. Keitt.

John A. Keitt died intestate in August, 1867, during the year of the farming operations on the Whetstone plantation, and the defendant, Peter M. Houser, administered on his estate, and brought suit against E. H. Rodgers & Co. for the cotton money, and recovered a verdict for $3,087.13, including costs. In the meantime, Twitty and other creditors of John A. Keitt insti-

tuted proceedings in the Probate Court for Orangeburg County
to marshal the assets of the estate of John A. Keitt.   Rodgers &
Co., who had been compelled to refund the cotton money, under
call for creditors, proved the note aforesaid as a specialty debt of
the estate of John A. Keitt for the whole amount, less the $530.38
paid by Jacob G. Keitt, and received their *pro rata* of $1,331.66
from the estate of John A. Keitt.   In November, 1879, Jacob G.
Keitt died intestate, and the plaintiff, Lawrence M. Whaley, be-
came his administrator, and was sued by Houser as administrator
of John A. Keitt, to recover back the $1,331.66 paid by the
estate of John A. Keitt as surety of Jacob G. Keitt on the note
aforesaid.   Whaley, as administrator, instituted proceedings to
marshal the assets of the estate of Jacob G. Keitt.   In this con-
test between the creditors of the two estates the special master re-
ported in favor of the claim of the estate of John A. Keitt against
the estate of Jacob G. Keitt for the $1,331.66 and interest, on
the ground that Jacob G. Keitt was the principal and John A.
Keitt was surety on the E. H. Rodgers & Co. note, as aforesaid.
Whaley, as administrator of Jacob G. Keitt, appealed, and the
Supreme Court *affirmed* the finding of the special master, that
Jacob G. Keitt was the principal and John A. Keitt was surety
on the Rodgers & Co. note.

The Supreme Court, in this cause (April term, 1882), say that
the agreement between the parties (father and son, as to farming
operations for 1867 on Whetstone plantation), although it lies at
the very foundation of this controversy, has not been ascertained
in this case, and as this is a contest between the creditors of the
two estates, it is necessary to determine what was the business
agreement between father and son.   The court further say, if John
A. Keitt actually cleared nothing by the farming operations, his
administrator, as against Jacob G. Keitt, would have no right to
retain any portion of the cotton money, and, having recovered it
from Rodgers & Co., the administrator of Jacob G. Keitt would
be entitled to the benefit of that recovery, and to set off such
claim for the cotton money against the claim of Houser, adminis-
trator, for the money paid by his intestate, as surety for his father.
These questions, the court say, can only be determined by ascer-
taining the exact agreement between the father and son as to the

farming operations for 1867. The court say that this agreement should be examined as an *original question*, without being affected in any manner by the verdict in the case against Rodgers & Co.

The above entitled case was remanded by the Supreme Court (April term, 1882) to the Circuit Court, to ascertain what were the terms of the agreement between Jacob G. Keitt and his son, John A. Keitt, as to the farming operations on the Whetstone plantation in the year 1867, and to apply the result according to the principles therein announced. On May 28, 1883, the case was referred by Judge Wallace to C. B. Glover, special master, to take the testimony respecting the terms of the agreement between Jacob G. Keitt and John A. Keitt, as to the farming operations on the Whetstone plantation in the year 1867, and to report the same and his conclusions of fact to this court at its next sitting for adjudication, with liberty to either party to object to the admissibility of testimony on the coming in of the report.

On September 25, 1883, the special master filed his report, in which he finds the agreement as to the farming operations on the Whetstone plantation in 1867 to be as follows: "That Jacob G. Keitt was to find all the supplies necessary to run the plantation. That the plantation was to be superintended by John A. Keitt. That after the laborers had received one-third of the crops for their services, then John A. Keitt was to have the net cotton, after all the expenses were paid." The special master concludes as matter of fact: I. That the Whetstone plantation was planted in the year 1867 by Jacob G. Keitt, who placed his son, John A. Keitt, in charge of the same as superintendent. II. That John A. Keitt was to receive for his services the net cotton remaining after all the expenses of the place were paid. III. That the expenses of the plantation exceeded the whole income derived from the crops, as it appears that when the proceeds from the cotton crop were applied to the Rodgers & Co. note (given for supplies), there remained a balance on that note unpaid, which balance was paid by Jacob G. Keitt. IV. That John A. Keitt died in August, 1867, and as there was no net cotton, after the expenses of the plantation were paid, there was nothing as a matter of fact to go to the estate of John A. Keitt.

The defendant, Peter M. Houser, administrator of John A.

Keitt, excepts to the report of the special master. In the view taken of this case it will be only necessary to consider the first exception in substance as follows: Because the special master erred in finding that the expenses exceeded the whole income derived from the crops raised on the Whetstone plantation in 1867, but should have found that the value of the crops exceeded the amount of expenses, and should have found the amount of such excess.

The referee finds that Jacob G. Keitt planted the land; that he placed his son, John A. Keitt, in charge as *superintendent,* who was to *receive* for his *services* the *net cotton after all the expenses of the place were paid.* As I understand it, the master finds that according to the terms of the agreement between father and son the measure of the son's compensation for services as superintendent depended upon whether or not there would be any *net cotton crop,* after paying all the expenses of the place cultivated.

It is very difficult now to ascertain accurately the terms of an oral agreement entered into in 1867, when both parties to the agreement are now deceased. Whilst at first view it might appear to be an unreasonable proposition for any one to agree to accept as compensation for such services the net cotton after paying all the expenses of the plantation, yet such terms may be made to appear more consistent and reasonable when the facts of the case, the circumstances and situation of the parties are considered.

It appears from the testimony that Jacob G. Keitt owned the land, furnished the stock, wagons, tools, seed, and supplies, including fertilizers. A highly intelligent witness, Dr. Wannamaker, testifies that he understood from Jacob G. Keitt that John A. Keitt was to receive two-thirds of the *net proceeds of cotton crop,* and that he, Jacob G. Keitt, was to *receive all the provision crop save what the negroes got,* and cotton seed. The witness, Spigener, testifies that Jacob G. Keitt told him he had not given the plantation to his son, but wanted to see what he could do for himself; that if he made anything *clear* on the crop, it is his. Robinson, *the foreman on the place,* testifies that Jacob G. Keitt had control of business and gave directions; that he went to the

place once or twice a week, after the crop was set, and sometimes every morning; that when Jacob G. Keitt didn't go to the place, he, Robinson, went to him for directions. Robinson and other laborers on the place testify that they heard John A. Keitt say, that after expenses of place were paid, he was to have the balance of the cotton. The written contract for hire of the laborers was made in the name of John A. Keitt, and witnessed by his father, Jacob G. Keitt. The laborers were to receive one-third of the crop. Some of the laborers testify that they were hired by Jacob G. Keitt.

It appears that the son, John A. Keitt, lived with his father, Jacob G. Keitt, some two miles distant from the Whetstone plantation, and had very limited means. The crop consisted of eighty or eighty-five acres of cotton, seventy-five or eighty acres of corn, and some peas, potatoes, &c., and was cultivated with five mules belonging to Jacob G. Keitt. As the father furnished the land, stock, tools, supplies, and fertilizers, it does not appear improbable that the son in limited means, who lived with his father, would agree to accept for his services as superintendent of the plantation, under the direction of the father, the net cotton, after paying the plantation expenses, including the labor. It is not material, however, to consider the reasonableness of the agreement. As matter of fact, the issue to be determined is, What were the terms of the agreement?

After a careful review of the testimony, I am constrained to concur in the finding of the special master that John A. Keitt agreed to superintend the Whetstone plantation for his father in 1867, and was to receive as compensation for his services the net cotton remaining after all the expenses of the plantation were paid; that the son died in August, 1867, before the crop was made; that the expenses of the plantation exceeded the net cotton, and, as matter of fact, there was nothing due the estate of John A. Keitt under said agreement.

The special master also finds, and states as matter of fact, that the expenses of the plantation exceeded the whole income derived from the crops. Having concluded and found as matter of fact that, under the agreement, the son was to receive as compensation for his services the *net cotton remaining after all the*

*expenses were paid,* it was neither material nor necessary for the special master to estimate or state the value of the crop, other than the cotton crop. All of the expenses of the plantation in making a crop, is a very comprehensive term. As the son died during the year, the expenses of the crop were necessarily increased beyond the calculation of the parties. It is in evidence that the father hired extra hands to pick cotton, gathered the grain crop, and prepared the cotton crop for market, after the death of the son.

It would seem that the expenses incident to the death of the son would have to be included, under the agreement, before the net cotton compensating the services of the son could be ascertained. Even if the value of the whole crops should have been estimated and stated by the master, as contended for by defendants, I am inclined to concur with the master in the conclusion that the expenses would exceed the whole income derived from the crop, inasmuch as the proceeds of the cotton failed to pay the debt of Rodgers & Co. for supplies by $530.35, without regard to the other expenses incident to the death of John A. Keitt during the year.

As already stated, it is difficult to arrive at a satisfactory conclusion as to the precise terms of an agreement entered into more than sixteen years ago, when both of the parties to the agreement are dead, yet I must conclude that there is enough in the testimony to sustain and support the findings of fact by the special master.

It is therefore ordered and adjudged, that the exceptions of Peter M. Houser, administrator of John A. Keitt, to the report of C. B Glover, special master herein, be overruled; the findings of fact by said special master be confirmed, and that the claim of Peter M. Houser, administrator, presented against the estate of Jacob G. Keitt, be disallowed.

Defendant appealed upon seventeen exceptions, but the points thereby raised are sufficiently indicated in the opinion of this court.

*Messrs. Jas. F. Izlar, Samuel Dibble,* and *Glover & Glover,* for appellant.

. *Mr. J. D. Pope,* contra.

February 21, 1885. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This litigation has been protracted for a number of years. It has a history in its different and changing phases somewhat involved, but for the purposes of the question now before us, it will not be necessary to reproduce it here, as it will be found fully stated in the last opinion in the cause pronounced by this court. See *MSS. Dec., No.* 1306, 18 *S. C.,* 602. It there appears that after disposing of other questions, mainly as to who was the principal and who the surety on a certain note, the contention assumed the form of a struggle between the creditors of John A. Keitt, deceased, and those of Jacob G. Keitt, deceased, as to which estate (both parties being dead) was entitled to the proceeds of the cotton crop made on the Whetstone plantation of Jacob G. Keitt in the year 1867.

Jacob G. Keitt was the father of John A., and even after the war the owner of considerable property, consisting of lands, stock, &c. John A., the son, had little, and being unmarried, lived with his father. It seems that the father, Jacob G., placed the son, John A., on his Whetstone plantation, about two miles from the family homestead, to superintend making a crop in the year 1867, but there was no written contract between them. John A. died in August of that year, and Jacob G. some time afterwards. It happened (explained in former opinion) that the proceeds of the cotton made on Whetstone fell into the hands of Peter M. Houser, administrator of John A., and that estate paid $1,331.66 to E. H. Rodgers & Co. on a note which had been given for supplies for Whetstone, signed by both John A. and Jacob G. Keitt.

It was afterwards decided that Jacob G. was responsible for the Rodgers debt as principal, and Houser, administrator of John A., sued Whaley, administrator of Jacob G., to recover the said $1,331.66 as so much money paid by the estate of the surety for that of the principal. That made it necessary to know whether the proceeds of the cotton crop originally belonged to the father or the son; for if they really belonged to the father, the administrator of the son was suing for money which never belonged to

his intestate, and which, of course, he could not *ex equo et bono* recover. And that could only be known by ascertaining what was the agreement between the father and the son as to the farming operations in 1867. This was the only question left undecided by the former judgment of this court.

This, and this alone, was referred back. The opinion states as follows: "As the court has decided that Jacob G. Keitt, the father, was the principal in the note for supplies, we think that, acting in the light of that decision, the controversy between the creditors of the father and the son, should be finally decided by the exact terms of the agreement which existed between them as to the farming operations on the Whetstone place in the year 1867. If, according to the agreement, John A., who died during the year, was to receive the whole crop of cotton before the expenses were paid and without regard to them, then his creditors are entitled to the money paid by his estate as surety for his father; but if, on the other hand, he was to receive under the agreement only the 'net cotton,' that which 'was over' after paying expenses, and those expenses, including the note for supplies, were greater than the value of the whole crop, then John A. actually made nothing during the year, and the administrator should recover nothing for the money paid. This question of fact was not specifically ascertained by the referee, or passed upon by the Circuit judge, and therefore upon *this point* the case must go back to the Circuit Court. The judgment of this court is, that the judgment of the Circuit Court be set aside and the case remanded, to *ascertain what were the terms of the agreement between Jacob G. Keitt and his son, John A., as to the farming operations on the Whetstone plantation in the year 1867, and to apply the result according to the principles herein announced.*"

Accordingly, the question sent back was referred to Charles B. Glover, Esq., as special referee, who took the testimony and reported that the terms of the agreement between Jacob G. and John A. Keitt were as follows: "Jacob G. Keitt was to find all the supplies necessary to run the plantation; the plantation was to be superintended by John A. Keitt; after the laborers had received one-third of the crop for their services, then John A. Keitt was to have the 'net cotton' after all the expenses were

paid." He finds as conclusions of fact: "1. That the Whetstone plantation was planted in the year 1867 by Jacob G. Keitt, who placed his son, John A., in charge of the same as superintendent. 2. That John A. Keitt was to receive for his services the 'net cotton' remaining after all the expenses of the place were paid. 3. That the expenses of the plantation exceeded the whole income derived from the crops, as it appears that when the proceeds from the cotton crop were applied to the Rodgers note (given for supplies) there remained a balance on that note unpaid, which balance was paid by Jacob G. Keitt. 4. That John A. Keitt died in August, 1867, and as there was no 'net cotton,' after the expenses of the plantation were paid, there was nothing, as a matter of fact, to go to the estate of John A. Keitt," &c.

To this report Peter M. Houser, administrator of John A. Keitt, filed exceptions, and after argument thereon, Judge Witherspoon affirmed the report, overruled the exceptions, and disallowed the claim presented by the administrator of John A. Keitt against the estate of Jacob G. Keitt. From this decree Houser, the administrator of John A. Keitt, appeals upon numerous grounds, which are in the brief and need not be set out here.

Several of the exceptions, in one form or another, complain that it was error to find that the terms of the agreement as to farming was that Jacob G. Keitt placed his son, John A., as superintendent on the Whetstone plantation, who was to receive for his services the "net cotton" after all expenses were paid; and that the expenses of the plantation exceeded the whole income from the crops. Being a chancery case, this court has appellate jurisdiction and may review the evidence; but the question referred was one purely of fact, as to which the special referee took the testimony and made a clear and distinct finding. The Circuit judge concurred with the referee, and in such cases, especially where the finding is based upon direct testimony involving the accuracy or credibility of witnesses, the rule has been uniform that this court will not disturb the finding, unless it is without any testimony to support it. See cases collected in *Reporter's Note*, 12 *S. C.*, 612. We have read the testimony in this case carefully, and cannot say there is no evidence to support the finding, which must therefore stand as established. Doubtless all human tri-

bunals are imperfect and may err, but from the nature of things it is necessary that there should be an end of controversy.

. It was urged that the finding was erroneous because of the inherent unreasonableness of the agreement found. As the Circuit judge correctly states, the question was what was the agreement, not whether it was reasonable or unreasonable. But if it had been otherwise, we fail to see the unreasonableness of an agreement, by which Jacob G. Keitt undertook to furnish land, stock, provisions, &c., paying all expenses, and to give to his son as superintendent all the "net cotton" that might be made; that is, taking upon himself all risks of misfortune and loss, and giving to his son substantially whatever clear profit, if any, might be made. On the contrary, it seems to us that such a contract with a stipulation that the son should have all the cotton, without regard to expenses, while certainly very kind, could hardly be regarded a business transaction.

Another class of exceptions complain that it was error not to include the value of the provision crops in discharging the current expenses. That was not an open question, but was absolutely concluded by the agreement, which, as found, embraced only the cotton. The land belonged to Jacob G. Keitt, and of course the provision crops belonged to him, unless they were included in the agreement in whole or in part. We are not informed why John A. had no interest in the provision crops, but it may have been for the reason that they were not made for market, but to replace those of like kind which had been consumed in making the crop.

Other exceptions complain that the "judge failed to decide that the claim of the plaintiff (Whaley), by way of set-off to the claim of P. M. Houser, administrator, was barred by lapse of time before the claim of Houser, administrator, accrued, although the counsel of Houser, administrator, duly urged the said objection . to the plaintiff's claim under the statute of limitations." We are not quite sure that we understand the view intended to be urged by this exception, but we suppose the proposition to be, that this is really the case of a plaintiff pleading the statute of limitations against a counter-claim set up by the defendant. If we are right in this, there are several reasons why that doctrine cannot be made to apply to this case. The defence interposed by the ad-

ministrator of Jacob G. Keitt is not in the nature of a counterclaim against the estate of his son, John A. Keitt, for agricultural advances in 1867. Such a claim could not stand for a moment, for the simple reason that he never made any such advances to his son. It now appears that he and not his son, John A., farmed Whetstone in 1867, and of course all the supplies furnished were for himself.

But while the estate of Jacob G. never had any claim against that of John A. for advances, it now appears from the agreement between them that the cotton made on the place that year belonged to Jacob G. for the purpose of assisting him in discharging the expenses. It follows that the money now sued for (being part of the proceeds of that cotton) was properly payable to the said expenses, and having been paid to Rodgers & Co. towards the satisfaction of a note for supplies at Whetstone in 1867 (on which Jacob G. was principal and John A. Keitt surety), was properly paid, and the administrator of John A. Keitt is not entitled to recover it from the estate of Jacob G. Keitt. The claim must fall, for the conclusive reason that the money never belonged to the estate of John A. Keitt, and being properly paid for the relief of the estate of Jacob G. Keitt, to which it belonged, it cannot be said that it was paid out of the estate of John A. as surety for Jacob G. Keitt.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.